**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF TENNESSEE**
**NASHVILLE DIVISION**

| | | |
|---|---|---|
| BRIAN SCOTT. BUSH, | ) | |
|     Plaintiff, | ) | |
| | ) | Civil Action No. 3:10-cv-1128 |
| v. | ) | Judge Nixon/Brown |
| | ) | |
| MICHAEL J. ASTRUE, | ) | |
| Commissioner of Social Security, | ) | |
|     Defendant. | ) | |

To:    The Honorable John T. Nixon, Senior Judge

## REPORT AND RECOMMENDATION

This is a civil action filed pursuant to 42 U.S.C. § 1383(c)(3) to obtain judicial review of the final decision of the Commissioner of Social Security denying Plaintiff's application for Supplemental Security Income ("SSI"), as provided under Title XVI of the Social Security Act (the "Act"), as amended. Currently pending before the Magistrate Judge is Plaintiff's Motion for Judgment on the Administrative Record, Defendant's Response. (Docket Entries 12, 13, 14, 15, 16). The Magistrate Judge has also reviewed the administrative record. (hereinafter "Tr.") (Docket Entry 10). For the reasons set forth below, the Magistrate Judge **RECOMMENDS** the Plaintiff's Motion be **DENIED** and that the decision of the Commissioner be **AFFIRMED**.

## I.  BACKGROUND

### A. Procedural History

Plaintiff filed an application[1] for SSI on June 18, 2007, with a protective filing date of May

---

[1] Plaintiff previously filed an application for SSI on May 15, 2006, with a protective filing date of April 19, 2006. (Tr. 102-09). That application was denied on June 27, 2006. (Tr.38-41).

29, 2006, alleging disability beginning December 31, 1999. (Tr. 7, 36, 37, 110-12). His claims were denied initially and upon reconsideration. (Tr. 48-50, 54-55). Upon Plaintiff's request, a hearing was conducted on April 28, 2010 before Administrative Law Judge ("ALJ") Roy J. Richardson. (Tr. 18-33). The ALJ issued his decision denying Plaintiff's claims on June 30, 2010. (Tr. 4-14). Plaintiff's request for the Appeals Council to review the ALJ's decision was denied on September 30, 2010, rendering the ALJ's decision the final decision of the Commissioner. (Tr. 1-3). Plaintiff filed this action on November 30, 2010, seeking review of that decision pursuant to 42 U.S.C. § 1383(c)(3).

**B. Plaintiff's Age, Education, and Work Experience**

Plaintiff was born on January 11, 1968, making him 42 years old as of the date of the ALJ's opinion. (Tr. 14). He has a ninth grade education. (Tr. 21). He has no past relevant work. (Tr. 12). He has not performed substantial gainful activity since May 29, 2007. (Tr. 9).

**C. Plaintiff's Medical Records**

Plaintiff was admitted to the Psychiatric Hospital at Vanderbilt for detoxification on March 14, 2006. (Tr. 181). Physician Tianlai Tang, M.D., Ph.D., noted that

> [Plaintiff] has been diagnosed with alcohol dependence. He was hospitalized in 1999 for 16 weeks for alcohol rehabilitation treatment. ... He says sometimes he feels depressed, but has never had suicidal thoughts or other symptoms of depression. His anxiety is high, and he sometimes has panic-like symptoms with sweating and palpitations. He uses Xanax at 6 to 8 mg on a daily basis for the four weeks. He also uses crack cocaine about two or three times per week, about $50 each time, since he was 18 years old. He also uses marijuana on an occasional basis. ... The patient is self-employed. He is a professional painter. ... [He] appeared to be anxious with mild hand tremor and fidgetiness. His thinking is logical and goal directed and no psychotic symptoms noted. His mood is mildly depressed. His anxiety is prominent. No psychosis is noticed.

(Tr. 184). In Plaintiff's diagnostic formulation, dated on March 17, 2006, his Global Assessment

Functioning (GAF)[2] was diagnosed as 35. *Id*. In Plaintiff's final diagnosis, dated on March 25, 2006, his GAF was diagnosed as 55. (Tr. 183). Plaintiff was discharged home on March 20, 2006. *Id*. Upon discharge, Plaintiff opted not to have any follow-up appointment or intensive outpatient treatment programs. *Id*. Dr. Tang recommended that Plaintiff attended AA meetings (90 meetings in 90 days) and obtain a sponsor. *Id*.

On March 14, 2006, Steven J. White, M.D., at Vanderbilt University Medical Center performed a physical examination on Plaintiff, due to Plaintiff's complaint of chest heaviness only when actively withdrawing from benzodiazepines. (Tr. 188). Dr. Whites noted no physical limitations. (Tr. 188-89).

Plaintiff alleges that he saw Sam Castellani, M.D., a treating psychiatrist, on July 8, 2006. (Tr. 227). Dr. Castellani stated that Plaintiff was compliant with treatment and making progress. However, because Dr. Castellani was now in prison, Plaintiff was unable to obtain his treatment records from Dr. Castellani. (Tr. 97).

On August 6, 2007, Plaintiff saw licensed clinical psychologist Kathryn B. Sherrod, Ph.D., for a Disability Determination Services (DDS) psychological evaluation. (Tr. 192-196). Based on observations, tests, and interview, Dr. Sherrod, in Functional Assessment, noted that:

---

[2] GAF ratings are subjective determinations based on a scale of 1 to 100 of "the clinician's judgment of the individual's overall level of functioning." American Psychiatric Association, Diagnostic and Statistical Manual Mental of Mental Disorders (4th ed.2000) at 32. A GAF score in the range 31-40 indicates "some impairment in reality testing or communication OR major impairment in several areas such as work, school, family relations, judgment, thinking or mood;" a GAF score in the range of 41-50 indicates "serious symptoms (e.g., suicidal ideation, severe obsessional rituals, frequent shoplifting) OR any serious impairment in social, occupational, or school functioning (e.g., no friends, unable to keep a job);" a GAF score in the range of 51-60 indicates "moderate symptoms (e.g., flat affect and circumstantial speech, occasional panic attacks) OR moderate difficulty in social, occupational, or school functioning (e.g., few friends, conflicts with peers or coworkers)." *Id*. at 34.

> Mr. Bush's ability to understand and remember does not appear to be significantly limited. His ability to sustain concentration appeared to moderately to severely limited during his evaluation. He seemed overwhelmed at times by the tasks he was given to do. He seemed to have difficulty thinking clearly. His social skills appear to be severely limited due to his depression. Mr. Bush's adaptive skills are moderately to severely limited by his depressed mood. He said that he has to push himself to take care of his personal needs but he lacks motivation to do household chores. He said that he does not know what is wrong with him. Mr. Bush appears to have the cognitive skills needed to manage his own funds, but because of the severity of his depression, he is not likely to keep up with his financial affairs so it appears prudent to appoint a payee to manage his funds.

(Tr. 196). Dr. Sherrod diagnosed Plaintiff's GAF as 45-50. (Tr. 195).

Plaintiff saw Dr. Grafton Thurman, on August 23, 2007, for a consultative examination regarding Plaintiff's complaints of depression, anxiety, and joint pain. (Tr. 198-201). Dr. Thurman opined that Plaintiff had no impairment-related physical limitations. (Tr. 201).

On August 27, 2007, Karen B. Lawrence, Ph.D., a State Disability Determination Services medical consultant, completed a psychiatric review technique form ("PRTF") and a mental residual functional capacity ("MRFC") assessment for Plaintiff. (Tr. 204-20). In Plaintiff's PRTF, Dr. Lawrence opined that Plaintiff was moderately restricted in activities of daily living, had moderate difficulties in maintaining social functions, and had moderate difficulties in maintaining concentration, persistence, or pace. (Tr. 214). In Plaintiff's MRFC, Dr. Lawrence opined that Plaintiff was moderately limited in eleven mental activities and not significantly limited in nine mental activities. (Tr. 218-19). In her Functional Capacity Assessment, Dr. Lawrence noted:

> [Plaintiff] can understand, remember and carry out simple one and two step, detailed, and complex instructions, [w]ill have difficulty, but still can attend to, persist with simple repetitive tasks, maintain simple schedule and routines. [Plaintiff] will have difficulty but still can relate adequately to co-workers, supervisors and general public and maintain appropriate social behavior. [Plaintiff] can adapt to gradual, infrequent changes and set short term goals.

(Tr. 220).

On September 1, 2007, Plaintiff saw medical consultant Michael N. Ryan, M.D., for a DDS

Medical Consultant Analysis. Dr. Ryan noted that Plaintiff's physical impairments singly and combined were not severe, and Plaintiff 's symptoms for physical disability were not credible. (Tr. 225).

On September 17, 2007, James Allsbrooks, a vocational examiner, completed a Vocational Analysis Work Sheet for Plaintiff. (Tr. 144-47). Mr. Allsbrooks found that Plaintiff could understand, remember, and carry out simple, detailed, and complex instructions. (Tr. 147). Mr. Allsbrooks also found that Plaintiff would have difficulty, but could still attend to and persist for simple tasks; would have difficulty, but could still relate adequately to co-workers, supervisors, and the general public; could adapt to gradual, infrequent change, and could set short term goals. *Id*.

On November 17, 2009, Plaintiff saw Kenneth Anchor, Ph.D. ABPP, a board-certified disability consultant and clinical psychologist, for a vocational and psychological evaluation. (Tr. 228-36). Dr. Anchor noted that Plaintiff was referred to him by Plaintiff's attorney. (Tr. 229). Based on behavioral observations, tests, and Plaintiff's medical records, Dr. Anchor noted that:

> [Plaintiff] achieved an I.Q. test score of 84 which placed him in the low average range of intellectual functioning at about the 15th percentile of the general population. This may be a somewhat conservative estimate of his true abilities. ... Personality test findings for [Plaintiff] indicate a psychodiagnostic impression of impulse control disorder with secondary features of chronic anxiety and depression.... Social skills are seriously impaired. Credibility findings were within normal limits. Malingering, symptom magnification, secondary gains and other manifestations of obstructiveness were ruled out by these test results. ... [Plaintiff's] current Global Assessment of Functioning rating of 47 (serious impairment) places him in the clinically remarkable range of overall psychological maladjustment. These test data considered with prior evaluations indicate a marked decline in functioning especially in recent years. ... [Plaintiff] will experience major difficulties in satisfactorily sustaining many types of full-time gainful employment in an unrestricted capacity such that he would fulfill minimal employer expectations without first achieving significant improvement. ... An individualized program of intensive individual and group psychotherapy is recommended.

(Tr. 228-34).

### D. The Hearing Testimony

At his administrative hearing, Plaintiff testified that he was divorced and had a nine-year old child, for whom he pays child support. (Tr. 21). He is unable to work due to depression and is supported financially by his mother.(Tr. 20-22). He is 6' 2" tall and weighs 375 pounds. (Tr. 25). He previously took medication for his depression, which did not offer him any relief. (Tr. 27). He underwent detoxification in 2006 due to cocaine abuse. (Tr. 24). He lives alone in a house but does not do yard work, housework, or laundry because he has no "desire to do anything." (Tr. 23). He drives occasionally to drug stores. (Tr. 24). He has no problems bathing every day. (Tr. 25).

Ms. Susan Brooks, the Vocational Expert ("VE"), testified at the hearing. (Tr. 29). The ALJ asked her whether a hypothetical claimant could find work if that claimant had no exertional limitations but, due to mental limitations, was limited to understanding, remembering, and carrying out routine, one step instructions, could respond appropriately to supervisors and co-workers but was not asked to make independent decisions, and was not required to engage in more than incidental interpersonal contact. *Id.* Ms. Brooks responded that such an individual could perform a number of jobs, including the jobs of packers and packagers, cleaner, laundry worker, and sewing machine operator. (Tr. 29-30). Plaintiff's attorney asked Ms. Brooks to opine on the ability of this hypothetical person to obtain employment if he was also markedly limited in his ability to sustain attention and concentration and persistence and in his ability to engage appropriately in social activities that would include accepting supervision and working with or near co-workers (Tr. 31). The ALJ stated that he did not need vocational expert testimony because such a person who was so limited would meet a listing under the agency's regulations. *Id.* Plaintiff's attorney then asked Ms. Brooks to consider whether a person with a GAF rating of 47 would be able to find competitive employment. (Tr. 32). The ALJ disallowed the question because it was a medical question beyond the expertise of the

vocational expert. *Id.*

**E**. **The ALJ's Findings of Facts and Conclusion**

In his written decision, dated on June 3, 2010, the ALJ made the following findings of fact and

conclusions of law:

1.  The claimant has not engaged in substantial gainful activity since May 29, 2007, the application date (20 CFR 416.971 *et seq.*).

2.  The claimant has the following severe impairments: depression and anxiety (20 CFR 416.920(c)).

3.  The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 416.920(d), 416.925 and 416.926).

4.  After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform a full range of work at all exertional levels but with the following nonexertional limitations. The claimant would be able to understand, remember, and carry out routine step instructions and respond appropriately to supervisors and coworkers in jobs that do not require independent decision making. The claimant has the mental capacity to perform work where interpersonal contact is only incidental to work performance.

5.  The claimant has no past relevant work (20CFR 416.965).

6.  The claimant was born on January 11, 1968 and was 39 years old, which is defined as a younger individual age 18-49, on the date the application was filed (20 CFR 416.963).

7.  The claimant has a limited education and is able to communicate in English (20 CFR 416.964).

8.  Transferability of job skills is not an issue because the claimant does not have past relevant work (20 CFR 416.968).

9.  Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 416.969 and 416.969(a)).

10. The claimant has not been under a disability, as defined in the Social Security Act, since May 29, 2007, the date the application was filed (20 CFR 416.920(g)).

(Tr. 9-13).

## II.  APPLICABLE LEGAL STANDARDS

### A. Standard of Review

This Court's review of the Commissioner's decision is limited to the record made in the administrative hearing process. *Jones v. Secretary*, 945 F.2d 1365, 1369 (6th Cir. 1991). The purpose of this review is to determine (1) whether substantial evidence exits in the record to support the Commissioner's decision, and (2) whether any legal errors were committed in the process of reaching that decision. *Landsaw v. Secretary*, 803 F.2d 211, 213 (6th Cir. 1986).

"Substantial evidence" means "such relevant evidence as a reasonable mind would accept as adequate to support the conclusion." *Her v. Commissioner*, 203 F.3d 388, 389 (6th Cir. 1999) (*citing Richardson v. Perales*, 402 U.S. 389, 401 (1971)). It has been further quantified as "more than a mere scintilla of evidence, but less than a preponderance." *Bell v. Commissioner*, 105 F.3d 244, 245 (6th Cir. 1996). Even if the evidence could also support a difference conclusion, the decision of the ALJ must stand if substantial evidence supports the conclusion reached. *Her*, 203 F.3d at 389 (*citing Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)). However, if the record was not considered as a whole, the Commissioner's conclusion is undermined. *Hurst v. Secretary*, 753 F.2d 517, 519 (6th Cir. 1985).

### B. Proceedings at the Administrative Level

The Claimant has the ultimate burden to establish an entitlement to benefits by proving his or her "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). At the administrative level of review, the claimant's case is considered under a five-step sequential evaluation process as follows:

8

1.      If the claimant is working and the work constitutes substantial gainful activity, benefits are automatically denied.

2.      If the claimant is not found to have an impairment which significantly limits his or her ability to work (a "severe" impairment), then he or she is not disabled.

3.      If the claimant is not working and has a severe impairment, it must be determined whether he or she suffers from one of the "listed" impairments[3] or its equivalent; if a listing is met or equaled, benefits are owing without further inquiry.

4.      If the claimant does not suffer from any listing-level impairments, it must be determined whether the claimant can return to the job he or she previously held in light of his or her residual functional capacity (*e.g.*, what the claimant can still do despite his or her limitations); by showing a medical condition that prevents him or her from returning to such past relevant work, the claimant establishes a *prima facie* case of disability.

5.      Once the claimant establishes a *prima facie* case of disability, it becomes the Commissioner's burden to establish the claimant's ability to work by providing the existence of a significant number of jobs in the national economy which the claimant could perform, given his or her age, experience, education, and residual functional capacity.

*Moon v. Sullivan*, 923 F.2d 1175, 1181 (6th Cir. 1990).

In determining residual functional capacity (RFC) for purposes of the analysis required at steps four and five above, the Commissioner is required to consider the combined effect of all the claimant's impairments, mental and physical, exertional and nonexertional, severe and non-severe. *See* 42 U.S.C. § 423(d)(2)(B).

### III. LEGAL ANALYSIS

Plaintiff presents seven alleged errors for review:

1.      The ALJ erred by not finding that Plaintiff meets the requirements of Listing 12.04 and Listing 12.06.

2.      The ALJ erred by finding that Plaintiff has the RFC to perform a full range of work at

---

[3] The Listing of Impairments is found at 20 C.F.R., Pt. 404, Subpt. P, Appendix 1.

all exertional levels.

3.      The ALJ erred by failing to consider all the evidence before him.

4.      The ALJ erred in not properly considering Plaintiff's obesity and its effects on his ability to work.

5.      The ALJ committed reversible error in failing to comply with Social Security Ruling 96-7p and 20 C.F.R. § 416.929 in evaluating Plaintiff's subjective limitations.

6.      The ALJ committed reversible error in failing to correctly evaluate Plaintiff's mental conditions in accordance with 20 C.F.R. §§ 416.920a, and 416.945(c).

7.      The ALJ erred in relying on the testimony of the vocational expert.

(Docket Entry 12-1, Plaintiff's Brief in Support of Motion for Judgment on the Administrative Record ("Plaintiff's Brief"), 11-24). Accordingly, Plaintiff maintains that, pursuant to 42 U.S.C. § 405(g), the Commissioner's decision should be reversed. *Id.* at 24. Or in the alternative, Plaintiff's matter should be remanded for further consideration by a new ALJ. *Id.* at 25.

Sentence four of § 405(g) states as follows:

> The court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing.

42 U.S.C. § 405(g). "In cases where there is an adequate record, the Secretary's decision denying benefits can be reversed and benefits awarded if the decision is clearly erroneous, proof of disability is overwhelming, or proof of disability is strong and evidence to the contrary is lacking." *Mowery v. Heckler*, 771 F.2d 966, 973 (6th Cir. 1985). Furthermore, a court can reverse the decision and immediately award benefits if all essential factual issues have been resolved and the record adequately establishes a plaintiff's entitlement to benefits. *Faucher v. Secretary*, 17 F.3d 171, 176 (6th Cir. 1994);

*see also Newkirk v. Shalala*, 25 F.3d 316, 318 (6th Cir. 1994).

The Magistrate Judge will combine some of the Plaintiff's alleged errors and discuss as follows:

**A.     The ALJ Properly Decided that Plaintiff Did Not Meet the Requirements of Listing 12.04 and Listing 12.06.**

Plaintiff argues that the substantial weight of the evidence reflects that his affective disorder satisfies the medical criteria of Listing 12.04, and his anxiety-related disorders meet the requirements of Listing 12.06. The burden of proof for establishing that an impairment meets or equals the requirements of a listed impairment rests with the claimant. *See Foster v. Halter*, 279 F.3d 348, 354 (6th Cir. 2001). To meet a listed impairment, a claimant must satisfy all of the criteria in the listing. *See Roby v. Comm'r of Soc. Sec.*, 48 Fed. Appx. 532, 536 (6th Cir. 2002) (citing *Hale v. Secretary of Health & Human Servs.*, 816 F.2d 1078, 1083 (6th Cir. 1987)). "If all the requirements of the listing are not present, the claimant does not satisfy that listing." *Berry v. Commissioner*, 34 F. App'x 202, 203 (6th Cir. 2002). "An impairment that manifests only some of those criteria, no matter how severely, does not qualify." *Sullivan v. Zebley*, 493 U.S. 521, 530, 110 S.Ct. 885, 107 L.Ed.2d 967 (1990). "It is insufficient that a claimant comes close to satisfying the requirements of a listed impairment." *Elam ex rel. Golay v. Commissioner*, 348 F.3d 124, 125 (6th Cir. 2003).

In order to meet either listing 12.04 or listing 12.06, Plaintiff must show that he satisfies the criteria in both Paragraph A and B of those listings. *See* 20 C.F.R. pt. 404, subpt. P, app.1 §§ 12.04, 12.06. To satisfy the B requirements of Listings 12.04 and 12.06, Plaintiff has to establish at least two of the following limitations: (1) marked restriction of activities of daily living; (2) marked difficulties in maintaining social functioning; (3) marked difficulties in maintaining concentration, persistence, or pace; or (4) repeated episodes of decompensation, each of extended duration. *Id.* Alternatively,

under listing 12.04, or 12.06 a claimant may satisfy the requirements of a listed mental impairment if he has a medically substantiated mental impairment and functional limitations that meet the "C" criteria of the listing. The "C" criteria for listing 12.04 requires a medically documented history of a mental impairment and one of the following: (1) repeated episodes of decompensation, each of extended duration; (2) a residual disease that has resulted in such marginal adjustment that even minimal increase in mental demands or change in the environment would be predicted to cause the individual to decompensate; or (3) a current history of 1 or more years' inability to function outside a highly supportive living arrangement with a need for such an arrangement to continue. 20 C.F.R. pt. 404, subpt. P, app. 1 § 12.04. For listing 12.06, the "C" criteria is met if the mental impairment resulted in the "complete inability to function independently outside the area of one's home." 20 C.F.R. pt. 404, subpt. P, app. 1 § 12.06.

In the present case, the ALJ found that Plaintiff did not satisfy the B or C criteria of Listings 12.04 and 12.06. (Tr. 9.) In so finding, the ALJ noted:

> In activities of daily living, the claimant has mild restriction. ... However, through at least 2009, the claimant has been able engage in activities of his choice, such as driving, reading, watching television, and spending time running errands with his girlfriend (Exhibit 9F).
>
> In social functioning, the claimant has moderate difficulties. The claimant reportedly isolates himself from others, but the evidence shows that he has had regular contact with family members and his girlfriend.
>
> With regard to concentration, persistence or pace, the claimant has moderate difficulties. The claimant is able to engage in activities, such as reading, watching television, and driving, which require some degree of concentration and attention.
>
> As for episodes of decompensation, the claimant has experienced no episodes of decompensation, which have been of extended duration.
>
> Because the claimant's mental impairments do not cause at least two "marked" limitations or one "marked" limitation and "repeated" episodes of decompensation, each of extended duration, the "paragraph B" criteria are not

satisfied.

The undersigned has also considered whether the "paragraph C" criteria are satisfied. In this case, the evidence fails to establish the presence of the "paragraph C" criteria.

(Tr. 9-10).

The record shows that the ALJ's findings are supported by substantial evidence. On August 6, 2007, a licensed clinical psychologist Kathryn B. Sherrod, Ph.D., completed a DDS psychological evaluation for Plaintiff, in which Plaintiff's ability to understand and remember did not appear to be significantly limited; Plaintiff's ability to sustain concentration appeared to moderately to severely limited; Plaintiff's social skills appear to be severely limited due to his depression; and Plaintiff's adaptive skills are moderately to severely limited by his depressed mood. (Tr. 196). On August 27, 2007, a State Disability Determination Services medical consultant, Karen B. Lawrence, Ph.D., completed a PRTF and a MRFC assessment for Plaintiff, in which Plaintiff was found to be moderately restricted in activities of daily living, to have moderate difficulties in maintaining social functions, and to have moderate difficulties in maintaining concentration, persistence, or pace. (Tr. 214). On September 17, 2007, a vocational examiner, James Allsbrooks, completed a Vocational Analysis Work Sheet for Plaintiff, in which Mr. Allsbrooks checked all of the relevant boxes indicating that Plaintiff's abilities in sustained concentration and persistence, social interaction, and adaption were moderately limited. (Tr. 144). On November 17, 2009, Plaintiff's own attorney referred Plaintiff to see Kenneth Anchor, Ph.D. ABPP, a board-certified disability consultant and clinical psychologist, for a vocational and psychological evaluation, in which Dr. Anchor also noted that Plaintiff drove himself to the evaluation, read the newspaper, watched TV, used the phone, went on errands with his girlfriend, and helped with light house chores including taking out the garbage, putting gas in the car, bring in the mail and doing dishes. The ALJ's findings that Plaintiff had

13

moderate, but not marked, difficulties in his activities of daily living , in social functioning, and in concentration, persistence or pace were consistent with the evidence of Record. Morever, there is nothing in the record to indicate that Plaintiff suffered repeated episodes of decompensation Without evidence of repeated episodes of decompensation or evidence of a second "marked" impairment, the ALJ properly concluded that the record did not establish that Plaintiff met or medically equaled Listing 12.04 or 12.06. As has been noted, the reviewing court does not substitute its findings for those of the Commissioner if substantial evidence supports the Commissioner's findings and inferences. *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). In fact, even if the evidence could also support a different conclusion, the decision of the ALJ must stand if substantial evidence supports the conclusion reached. *Her*, 203 F.3d at 389. The ALJ's decision that Plaintiff's impairments did not meet or medically equal a Listing was properly supported by substantial evidence; the ALJ's decision, therefore, must stand.

### B. The ALJ Properly Found that Plaintiff Had the RFC to Perform a Full Range of Work at All Exertional Levels.

Plaintiff maintains that the ALJ erred in concluding that he had the residual functional capacity to perform a full range of work at all exertional levels. (Docket Entry 12-1, Plaintiff's Brief, 14). "Residual Functional Capacity" is defined as the "maximum degree to which the individual retains the capacity for sustained performance of the physical-mental requirements of jobs." 20 C.F.R. Pt. 404, Subpt. P, App. 2 § 200.00(c). With regard to the evaluation of physical abilities in determining a claimant's Residual Functional Capacity, the Regulations state:

> When we assess your physical abilities, we first assess the nature and extent of your physical limitations and then determine your residual functional capacity for work activity on a regular and continuing basis. A limited ability to perform certain physical demands of work activity, such as sitting, standing, walking, lifting, carrying, pushing, pulling, or other physical functions (including manipulative or postural functions, such as reaching, handling, stooping or

crouching), may reduce your ability to do past work and other work

20 C.F.R. § 404.1545(b).

1. Plaintiff's Subjective Complaints

Plaintiff first argues that the ALJ did not appropriately address his complaints of pain and

resulting functional limitations. (Docket Entry 12-1, Plaintiff's Brief, 14, 19-20). Plaintiff alleges that

he had joint pain for the last 15 years in his neck, shoulders, elbows, wrists, knees, ankles, and feet.

*Id*. Plaintiff also alleges that he is obese and has redness, tenderness, and swelling in his joints. *Id*.

The Agency's rules governing disability determination establish a two-step process for

evaluating pain. See 20 C.F.R. § 416.929, SSR 96–7p. The Sixth Circuit has set forth the following

criteria for assessing a plaintiff's allegations of pain:

> [S]ubjective allegations of disabling symptoms, including pain, cannot alone
> support a finding of disability ... [T]here must be evidence of an underlying
> medical condition and (1) there must be objective medical evidence to confirm
> the severity of the alleged pain arising from the condition or (2) the objectively
> determined medical condition must be of a severity which can reasonably be
> expected to give rise to the alleged pain.

*Duncan v. Secretary*, 801 F.2d 847, 853 (6th Cir. 1986) (quoting S.Rep. No. 466, 98th Cong., 2d Sess.

24); *see also* 20 C.F.R. §§ 404.1529, 416.929 ("[S]tatements about your pain or other symptoms will

not alone establish that you are disabled ...."); *Moon v. Sullivan* , 923 F.2d 1175, 1182–83 (6th Cir.

1990) ("[T]hough Moon alleges fully disabling and debilitating symptomology, the ALJ, may distrust

a claimant's allegations ... if the subjective allegations, the ALJ's personal observations, and the

objective medical evidence contradict each other."). Moreover, "allegations of pain ... do not constitute

a disability unless the pain is of such a debilitating degree that it prevents an individual from engaging

in substantial gainful activity." *Bradley v. Secretary*, 862 F.2d 1224, 1227 (6th Cir. 1988).

When analyzing the claimant's subjective complaints of pain, the ALJ must also consider the

following factors and how they relate to the medical and other evidence in the record: the claimant's daily activities; the location, duration, frequency and intensity of claimant's pain; the precipitating and aggravating factors; the type, dosage and effect of medication; and the other treatment or measures to relieve pain. *See Felisky v. Bowen*, 35 F.3d 1027, 1039 (6th Cir. 1994) (construing 20 C.F.R. § 404.1529(c)(2)). After evaluating these factors in conjunction with the evidence in the record, and by making personal observations of the claimant at the hearing, an ALJ may determine that a claimant's subjective complaints of pain and other disabling symptoms are not credible. *See, e.g., Walters v. Commissioner*, 127 F.3d 525, 531 (6th Cir. 1997); *Blacha v. Secretary*, 927 F.2d 228, 230 (6th Cir. 1990); *Kirk v. Secretary*, 667 F.2d 524, 538 (6th Cir. 1981).

The ALJ, when evaluating the entirety of the evidence, is entitled to weigh the objective medical evidence against Plaintiff's subjective claims of pain and reach a credibility determination. *See, e.g., Walters*, 127 F.3d at 531; *Kirk*, 667 F.2d at 538. An ALJ's findings regarding a claimant's credibility are to be accorded great weight and deference, particularly because the ALJ is charged with the duty of observing the claimant's demeanor and credibility. *Walters*, 127 F.3d at 531 (citing *Villarreal v. Secretary*, 818 F.2d 461, 463 (6th Cir. 1987)). Discounting credibility is appropriate when the ALJ finds contradictions among the medical reports, the claimant's testimony, the claimant's daily activities, and other evidence. *See Walters*, 127 F.3d at 531 (internal citation omitted); *Siterlet v. Secretary*, 823 F.2d 918, 921 (6th Cir. 1987)). Despite that deference, an ALJ's assessment of a claimant's credibility must be supported by substantial evidence. *Walters* 127 F.3d at 531.

A review of the ALJ's opinion in the instant case reflects that the ALJ applied the appropriate Agency and legal standards in assessing Plaintiff's RFC due to his alleged symptoms. Substantial evidence supports the ALJ's assessment of Plaintiff's credibility. While the ALJ found that Plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms, he

found that Plaintiff's statements concerning the intensity, persistence and limiting effects of those symptoms were not credible to the extent they were inconsistent with the Plaintiff's RFC assessment. (Tr. 11). In reaching his findings, the ALJ considered the requisite factors mandated by 20 CFR 416.929 and SSRs 96-4p and 96–7p, including the objective medical evidence, the effectiveness of Plaintiff's medication at relieving his pain, and Plaintiff's daily activities. After considering the objective medical evidence, the ALJ reported that "[w]hile it is noted the claimant was hospitalized with psychiatric complaints a few months before his intial application for benefits was filed, it is also noted that his primary diagnosis was substance induced mood disorder with alcohol dependence and cocaine/marijuana abuse." (Tr. 11). With respect to Plaintiff physical limitations, the ALJ noted that:

> the findings of the consultative examiner, Dr. Grafton Thurman, who following an August 23, 2007 evaluation opined "the claimant has no impairment-related physical limitations" in combination with his very limited medical history, despite having been insured through 2007, convinces the undersigned the claimant has no physical restrictions.

(Tr. 12).

The ALJ also considered Plaintiff's daily activities. *See Blacha*, 927 F.2d at 231 (acknowledging that "an ALJ may consider household and social activities in evaluating complaints of disabling pain"); *see also* 20 C.F.R. §§ 404.1529(c)(3)(i), 416.929(c)(3)(I). The ALJ noted that "in contrast to the very restricted activities of daily living reported during the hearing, the claimant in August 2007, two months after his current application for benefits was filed, reported engaging in activities of his choice, including sleeping until he wants to get up, making his own lunch and dinner, and watching television." (Tr. 11). Additionally, the ALJ also noted that there was conflicting information regarding Plaintiff's work history, "telling one examining source he had never been fired from a job and another he was fired after 12 years of employment." (Tr. 12). In sum, the Magistrate Judge finds that the ALJ properly evaluated Plaintiff's credibility and the ALJ's findings were based

upon substantial evidence.

2. Plaintiff's GAF

Plaintiff also argues that his low GAF scores has indicated that he was unable to engage in substantial gainful activity. (Docket Entry 16, Plaintiff's Reply Brief, 1-2). Plaintiff also alleges that he did not receive a full and fair hearing because he was not allowed to question the VE regarding the ability to perform the listed jobs with a GAF score of 47. *Id*. at 2.

Notably, the mental disorder Listings do not reference GAF scores. Thus, an individual's GAF does not determine whether the requisite level of severity has been met for the purposes of Social Security disability. *DeBoard v. Comm'r of Soc. Sec.*, 211 Fed. App'x. 411, 415 (6th Cir. 2006). A GAF score represents a clinician's subjective determination of an individual's overall ability to function. *Wesley v. Comm'r of Soc. Sec.*, 2000 WL 191664, at *3 (6th Cir. Feb.11, 2000) (citing Diagnostic & Statistical Manual of Mental Disorders 30 (4th ed.1994)). GAF scores "are not raw medical data." *Kennedy v. Astrue*, 247 Fed. Appx. 761, 766 (6th Cir. 2007). A GAF score does not necessarily have any "bearing on the subject's social and occupational functioning." *Kornecky v. Comm'r of Soc. Sec.*, 2006 WL 305648, at * 13-* 14 (6th Cir. Feb.9, 2006). Furthermore, there is no statutory or regulatory authority requiring the ALJ to use the GAF score. *Id*.; *Howard v. Comm'r of Soc. Sec.*, 276 F.3d 235, 241 (6th Cir. 2002) (ALJ's failure to refer to GAF score did not make his RFC analysis unreliable). As the GAF score characterizes Plaintiff's overall mental health rather than his ability to work, the ALJ was not required to factor the GAF score into his assessment of functional capacity.

Morever, the record reflects that the ALJ considered that Plaintiff's GAF of 55, calculated on March 25, 2006, 6 days before he was discharged from the Psychiatric Hospital at Vanderbilt, was indicative of moderate to serious symptoms. (Tr. 11). However the ALJ noted:

> his primary diagnosis was substance induced mood disorder with alcohol

dependence and cocaine/marijuana abuse ...This evidence, the fact when the claimant was discharged 6 days later he was assessed with social, occupational, and psychological functioning (GAF) of 55,... and information provided by his treating psychiatrist, Dr. Sam Castellan, on August 8, 2006, when he reported with treatment the claimant was making progress, do not support a conclusion the claimant was precluded from working commencing May 14, 2006, the date his initial application for benefits was filed.

(Tr. 11). The ALJ also considered Plaintiff's GAF of 45 to 50, calculated by Kathryn B. Sherrod, PhD., on August 6, 2007, and Plaintiff's GAF of 47, calculated by Kenneth Anchor, Ph.D., on November 17, 2009. The ALJ noted that those GAF assessments, which were based in large part on Plaintiff's subjective complaints were inconsistent with his very limited treatment history and his acknowledged daily activities. (Tr. 12). The ALJ may reject the opinion of a physician "where such is unsupported by the medical record, merely states a conclusion, or is contradicted by substantial medical evidence." *Edwards v. SSA*, 654 F.Supp.2d 692, 702 (W.D.Mich. 2009) (citing, *inter alia*, *Cutlip v. HHS*, 25 F.3d 284, 286-87 (6th Cir. 1994)). Accordingly, the ALJ did not commit any error in the evaluation of Plaintiff's GAF in determining a Plaintiff's Residual Functional Capacity.

Nonetheless, the Sixth Circuit has repeatedly held that GAF scores in the mid 30s to mid 50s are consistent with the ability to perform simple, unskilled, low stress work. *E.g., Smith v. Comm'r of Soc. Sec.*, 482 F.3d 873, 877 (6th Cir. 2007) (holding that a GAF score in the high 40s to mid 50s did not preclude the ability to work); *Smith v. Comm'r of Soc. Sec.*, 74 Fed. App'x. 548, 553 (6th Cir. 2003) (determining that plaintiff with a GAF score of 48 was ineligible for disability benefits); *Nierzwick v. Comm'r of Soc. Sec.*, 7 Fed. App'x. 358, 363 (6th Cir. 2001) (finding that plaintiff was able to work, despite a GAF score of 35). In the present case, Plaintiff's GAF scores of 35 to50 lie exactly within the mid 30s to mid 50s range, which indicates the ability to perform simple, unskilled, low stress work.

<u>3. VE Testimony at the Plaintiff's Hearing</u>

Plaintiff alleges that he did not receive a full and fair hearing because he was not allowed to question the VE regarding the ability to perform the listed jobs with a GAF score of 47. (Docket Entry 12-1, Plaintiff's Brief, 21-22). As the Sixth Circuit Court of Appeals has held, an ALJ is not obligated to consider a VE's response to questions based on information that the ALJ has decided is not supported by substantial evidence or is not credible. *See Felisky v. Bowen*, 35 F.3d 1027, 1036 (6th Cir. 1994). "It is well established that the hypothetical questions need only incorporate ... those limitations which the ALJ has accepted as credible." *Infantado v. Astrue*, 263 F. App'x 469, 476-77 (6th Cir. 2009); *Grifeth v. SSA*, 217 F. App'x 425, 429 (6th Cir. 2007) ("An ALJ is not required to accept a claimant's subjective complaints, and 'can present a hypothetical to the VE on the basis of his own assessment if he reasonably deems the claimant's testimony to be inaccurate.' ") (quoting *Jones v. SSA*, 336 F.3d 469, 476 (6th Cir. 2003))); *see also Lusk v. SSA*, 106 F. App'x 405, 409 (6th Cir. 2004) (agreeing with district court that "an ALJ need not consider a VE's answer to a hypothetical that he later determines is not supported by the evidence", in that case his ultimate determination that claimant's coronary problems did not meet or equal any of the impairments listed in Part 404); *Hall-Thulin v. SSA*, No. 96-1940, 110 F.3d 64, 1997 WL 144237, *2 (6th Cir. Mar.27, 1997) ("The ALJ did not have to accept Hall-Thulin's assertion that her medication makes her so drowsy that it creates an additional restriction on her ability to perform sedentary work. There was no requirement that the ALJ's hypothetical question to the VE reflect this unsubstantiated complaint."). Accordingly, in the case at hand, the ALJ was not required to rely on the VE's response to hypothetical limitations that were not reflected in the ALJ's RFC determination.

As discussed in detail above, the ALJ, after evaluating all of the objective medical evidence of record and the claimant's level of activity, determined that Plaintiff had the Residual Functional

Capacity to perform a full range of work at all exertional levels. (Tr 10). The ALJ properly evaluated

the evidence in reaching this Residual Functional Capacity determination, and the Regulations do not

require more. Moreover, the ALJ's determination that Plaintiff had the Residual Functional Capacity

to perform a full range of work at all exertional levels is supported by the evidence that he "has been

able to maintain close ties with family, date, cook, read, watch television, and drive." (Tr 12). Because

there is substantial evidence in the record to support the ALJ's Residual Functional Capacity

determination, the ALJ's determination must stand.

      **C.**     **The ALJ Properly Considered All the Evidence before Him**.

Plaintiff claims that the ALJ failed to consider all medical evidence with regard to Plaintiff's

weakness. Specifically, Plaintiff alleges that the ALJ erred by only giving minimal weight to the

assessments of Dr. Anchor, who indicated that Plaintiff had serious symptoms. (Docket Entry 12-1,

Plaintiff's Brief, 17).

An ALJ must weigh medical opinions in the record based on certain factors. 20 C.F.R. §§

404.1527(d); 416.927(d). In determining how much weight to afford a particular opinion, an ALJ must

consider: 1) examining relationship; 2) treatment relationship-length, frequency, nature and extent;

3) supportability; 4) consistency; and 5) specialization. *Id.*; *Ealy v. Comm'r of Soc. Sec.*, 594 F.3d 504,

514 (6th Cir. 2010).

The Social Security regulations provide that a treating physician's opinion is entitled to

controlling weight if that opinion is "well-supported by medically acceptable clinical and laboratory

diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record."

20 C.F.R. § 416.927(d)(2); *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004)). Even

if the treating physician's opinion is not entitled to "controlling weight," there is nevertheless a

rebuttable presumption that it deserves "great deference" from the ALJ. *Rogers v. Comm'r of Soc. Sec.*,

486 F.3d 234, 242 (6th Cir. 2007). Importantly, the ALJ must give "good reasons" for the weight it gives a treating physician's opinion. *Id.*

When controlling weight is assigned to the medical opinion of the "treating source" the Administrative Law Judge is not required to assign weight to medical opinions from examining and/or non-examining sources. 20 C.F.R. §§ 404.1527(d) and (f)(ii).While it might be ideal for an ALJ to articulate his reasons for crediting or discrediting each medical opinion, it is well settled that: "[a]n ALJ can consider all the evidence without directly addressing in his written decision every piece of evidence submitted by a party." *Kornecky v. Commissioner of Social Security*, 167 Fed.Appx. 496, 508 (6th Cir. 2006) Nor must an ALJ make explicit credibility findings as to each bit of conflicting testimony, so long as his factual findings as a whole show that he implicitly resolved such conflicts. *Id. (*Citing *Loral Defense Systems-Akron v. N.L.R.B.*, 200 F.3d 436, 453 (6th Cir. 1999).

A "treating source" is a physician, psychologist, or other "acceptable medical source" who provides the claimant, or has provided the claimant, with medical treatment or evaluation and who has, or has had, an ongoing treatment relationship with the claimant. 20 C.F.R. § 404.1502. The Sixth Circuit has held that as a matter of law, a single examination does not suffice to create a treating relationship. *Kornecky v. Comm'r of Soc. Sec.*, 167 Fed.Appx. 496, 506 (6th Cir. 2006). (citing *White v. Barnhart*, 415 F.3d 654, 658 (7th Cir.2005)). "Indeed, depending on the circumstances and nature of the alleged condition, two or three visits often will not suffice for an ongoing treatment relationship." *Kornecky*, 167 Fed.Appx. at 506 (citing *Cunningham v. Shalala*, 880 F.Supp. 537, 551 (N.D.Ill.1995) (where physician saw claimant five times in two years, it was 'hardly a foregone conclusion' that his opinion should be afforded great weight)); *see also Boucher v. Apfel*, No. 99-1906, 2000 WL 1769520, at *9 (6th Cir. Nov. 15, 2000) (although physician examined claimant three times (once each in 1990, 1992, and 1992), he was not entitled to treating-physician status).

In this instant case, Dr. Anchor examined Plaintiff one time, on November 17, 2009, at the request of his disability attorney. (Tr. 228-36). Accordingly, Dr. Anchor was not a treating physician, and the ALJ was not required to assign weight to his opinion. In turn, the ALJ was not obligated to make explicit credibility findings as to Dr. Anchor's report. Treating physician or not, the fact remains that the ALJ did review Dr. Anchor's opinion and discounted his opinion because it was based in large part on Plaintiff's subjective complaints, and was inconsistent with Plaintiff's very limited treatment history and his acknowledged daily activities. (Tr. 12). As noted above, the ALJ was entitled to properly discount Dr. Anchor's opinion as it was based upon Plaintiff's subjective complaints. *Edwards*, 654 F.Supp.2d at 702; *see also Gilmore v. Astrue*, No. 2:10–00054, 2011 WL 2682990, at *10 (M.D. Tennessee, July 11, 2011).

**D.      The ALJ Did Not Error as to Plaintiff's Alleged Obesity Claim**.

Plaintiff alleges that both Dr. Sherrod and Dr. Thurman noted that Plaintiff was obese, but the ALJ did not consider Plaintiff's obesity at any step of the sequential evaluation as required by SSR 02-1p.

SSR 02–1p instructs how to identify obesity as a medically determinable impairment:

> When establishing the existence of obesity, we will generally rely on the judgment of a physician who has examined the claimant and reported his or her appearance and build, as well as weight and height. Thus, in the absence of evidence to the contrary in the case record, we will accept a diagnosis of obesity given by a treating source or by a consultative examiner. However, if there is evidence that indicates that the diagnosis is questionable and the evidence is inadequate to determine whether or not the individual is disabled, we will contact the source for clarification, using the guidelines in 20 CFR 404.1512(e) and 416.912(e).
> When the evidence in a case does not include a diagnosis of obesity, but does include clinical notes or other medical records showing consistently high body weight or BMI, we may ask a medical source to clarify whether the individual has obesity. However, in most such cases we will use our judgment to establish the presence of obesity based on the medical findings and other evidence in the case record, even if a treating or examining source has not indicated a diagnosis of

obesity. Generally, we will not purchase a consultative examination just to establish the diagnosis of obesity.

When deciding whether an individual has obesity, we will also consider the individual's weight over time. We will not count minor, short-term weight loss. We will consider the individual to have obesity as long as his or her weight or BMI shows essentially a consistent pattern of obesity. (See question 13 for a discussion of weight loss and medical improvement.)

Finally, there are a number of methods for measuring body fat and, if such information is in a case record, we will consider it. However, we will not purchase such testing. In most cases, the medical and other evidence in the case record will establish whether the individual has obesity.

TITLES II AND XVI: EVALUATION OF OBESITY, SSR 02–1p, 2000 WL 628049, ——3–4

[footnote 3 omitted].

It is up to the claimant to furnish medical and other evidence which the "Social Security Administration can use to reach conclusions about [a claimant's] medical impairment(s) and its effect on [his] ability to work on a sustained basis." 20 CFR § 404.1512(a). Moreover, a claimant must also provide enough evidence of the effect obesity has on his ability to work. *Young v. Commissioner of Social Sec.*, No. 3:09 CV 1894, 2011 WL 2182869 (N.D. Ohio, June 6, 2011). The Court in *Cranfield v. Comm'r of Soc. Sec.*, held that

> Ms. Cranfield provided no evidence that obesity affected her ability to work. Moreover, 20 CFR § 404.1512(a) required Ms. Cranfield to "furnish medical and other evidence that [the SSA] can use to reach conclusions about [her] medical impairment(s) and ... its effect on [her] ability to work on a sustained basis." See 20 CFR § 404.1512(a). Ms. Cranfield did not satisfy this requirement with respect to an obesity claim. Thus, the ALJ and the district court had no obligation to address Ms. Cranfield's obesity.

79 Fed. Appx. 852, 857-58 (6th Cir. 2003).

In the present case, Plaintiff did not allege obesity as an impairment. Plaintiff did not complain of obesity in his testimony before the ALJ or in his Disability Report Forms. (Tr. 20-32, 34-37). Nor did he furnish any evidence as to the effect obesity had on his ability to work. Indeed, Dr. Thurman

opined that Plaintiff "has no impairment-related physical limitations" (Tr. 201). Morever, the record shows that Dr. Sherrod reported that "Mr. Bush was tall and obese." (Tr. 192). Dr. Thurman reported that "this is an obese white male with brown hair." (Tr. 200). Dr. Anchor reported that "he is an obese individual" (Tr. 229). All of them were mere single notations, without providing Plaintiff's weight or any medically acceptable clinical and laboratory diagnostic techniques. It is clear that the ALJ had no evidence of the effect of Plaintiff's obesity on his ability to work. Therefore, because Plaintiff failed to furnish evidence as to how his alleged obesity affected his ability to work, the ALJ was not required to give obesity any express consideration in the report.

## IV. RECOMMENDATION

In light of the foregoing, the Magistrate Judge **RECOMMENDS** that Plaintiff's Motion for Judgment on the Administrative Record be **DENIED,** and that the decision of the Commissioner be **AFFIRMED.**

Any party has fourteen (14) days from receipt of this Report and Recommendation in which to file any written objection to it with the District Court. Any party opposing said objections shall have fourteen (14) days from receipt of any objections filed in which to file any responses to said objections. Failure to file specific objections within fourteen (14) days of receipt of this Report and Recommendation can constitute a waiver of further appeal of this Recommendation. *Thomas v. Arn*, 474 U.S. 140 (1985); *Cowherd v. Million*, 380 F.3d 909, 912 (6th Cir. 2004) (en banc).

ENTERED this 8th day of August, 2011.

/S/ Joe B. Brown
JOE B. BROWN
United States Magistrate Judge